UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK LASTER,

       Plaintiff,                          Case No. 1:11-cv-1061

v.                                         HON. JANET T. NEFF

CITY OF KALAMAZOO *et al.*,

       Defendants.
_____/

## OPINION

Plaintiff Mark Laster, an African-American, filed this action alleging various violations of his civil, constitutional and statutory rights stemming from discrimination and retaliation he allegedly suffered while employed as a Public Safety Officer by the City of Kalamazoo Department of Public Safety. The matter is currently before the Court on Defendants' Motion for Summary Judgment and Dismissal (Dkt 91), to which Plaintiff filed a Response (Dkt 96) and Defendant filed a Reply (Dkt 94). This motion is being decided without oral argument. *See* W.D. Mich. LCivR 7.2(d). After careful consideration of the parties' arguments and applicable law, the Court grants Defendants' motion.

## I. BACKGROUND

Plaintiff's claims originate from the June 7, 2010 Kalamazoo Central High School graduation ceremony, which was held at the Western Michigan University Field House and for which the guest

speaker was President Barack Obama (Dkt 93, Dfs.' Statement of Material Fact [SMF]$^1$ ¶ 2). To ensure the President's safety, the City of Kalamazoo Department of Public Safety (hereinafter "the City" or "the Department") deployed its officers to monitor numerous places (*id.* ¶ 3). Plaintiff, a 23-year employee of the City, was not among those officers who were on duty that day, although he attended the graduation event (*id.* ¶¶ 1, 4-5).

According to Defendants, before Plaintiff entered the field house in which the commencement speech was to be given, he engaged in a series of acts that may have constituted violations of either law or department policy and rules (Dfs.' SMF ¶ 6). As part of its investigation, the Department interviewed Plaintiff and several persons who either interacted with or observed Plaintiff that day (*id.* ¶ 8). Plaintiff disputes that "anything he did while off-duty should have resulted in the massive investigation" (*id.* ¶ 7).

The parties agree that their Collective Bargaining Agreement provides that whenever an officer's conduct gives rise to the possibility of disciplinary actions by the Department, the officer must be provided a "Predetermination Hearing," i.e., an opportunity to explain or defend the conduct before the Department makes a determination as to what disciplinary action, if any, is to be taken (Dfs.' SMF ¶¶ 10-11). Kalamazoo Public Safety Department Chief Jeffrey Hadley assigned Deputy Chief Samuel Harris to conduct the Predetermination Hearing in this case and to thereafter recommend what disciplinary action, if any, to take regarding Plaintiff (*id.* ¶ 12).

Plaintiff and his union representative, Laura Misner, were provided with a multi-page document that outlined the Department's concerns and the possible violations, including:

---

$^1$Unless otherwise noted, the Court has cited to the material facts stated by Defendants that Plaintiff did not dispute in his corresponding response (Dkt 96).

- Violation of 18 U.S.C. § 1752, regarding wrongfully entering premises that were secured for the protection of the President of the United States;

- Violation of Department Rule 15, regarding unprofessional conduct;

- Violation of Department Rule 4.2, regarding attempting to gain special consideration because of one's employment with the Department;

- Violation of Department Rule 4.1, regarding disrespectful conduct towards a superior officer;

- Violation of Department Rule 4.2, regarding engaging in conduct that results in public criticism of the department; and

- Violation of Department Rule 15 regarding being truthful at all times during an investigation.

(*id.* ¶¶ 9, 13). Plaintiff and Misner were advised that the Predetermination Hearing would occur on September 2, 2010 (*id.* ¶ 13).

Kalamazoo Public Safety Department Lieutenant Mike McCaw was not present at the graduation, nor did he have any contact with Plaintiff that day; however, at some point before September 2, 2010, McCaw became aware that the Department was investigating Plaintiff's conduct at the high school graduation (Dfs.' SMF ¶¶ 17-19). On the morning of September 2, 2010, McCaw and Plaintiff talked on the telephone (*id.* ¶ 20). Plaintiff told McCaw that a Predetermination Hearing was scheduled for later that morning and asked McCaw what he thought would happen to Plaintiff (*id.* ¶ 21). McCaw told Plaintiff that he thought Plaintiff would be fired (*id.* ¶ 22). Plaintiff does not dispute that McCaw's opinion was not informed by any prior information from the chief, deputy chief, or the two assistant chiefs (*id.* ¶ 23). In fact, according to Defendants, McCaw expressly told Plaintiff that he had *not* been told by the chief, deputy chief or either of the two assistant chiefs that Plaintiff was going to be fired (*id.* ¶ 24).

After McCaw provided Plaintiff his opinion, Plaintiff told McCaw that he would probably resign before the Predetermination Hearing (Dfs.' SMF ¶ 25). Plaintiff testified that before his September 2, 2010 telephone conversation with McCaw, it was his intention to continue to work for the City for three more years (*id.* ¶ 32). However, Plaintiff told McCaw that he was going to resign, at least in part, because he thought that he would not get retiree health insurance if he was fired (*id.* ¶ 26). Both McCaw and union representative Misner encouraged Plaintiff to reconsider his decision and to instead pursue the Predetermination Hearing (*id.* ¶¶ 26-27).

After speaking with McCaw but before the 11:00 a.m. Predetermination Hearing, Plaintiff prepared, signed and submitted an "Office Memorandum" that stated: "I hereby tender my retirement today from the Kalamazoo Department of Public Safety, effective at the end of my 186 hours of unused vacation time, for 2010" (Dfs.' SMF ¶ 29). Union representative Misner also advised Deputy Chief Harris that Plaintiff had decided that he did not want the Predetermination Hearing to occur and would instead retire from his employment with the City of Kalamazoo (*id.* ¶ 14). Because Plaintiff submitted his written notice of retirement, the Predetermination Hearing did not occur (*id.* ¶ 30). Jerome Post, the City's Director of Human Resources, corroborated that Plaintiff's decision to retire occurred before any decision was made as to what discipline, if any, to impose (*id.* ¶ 33). After retiring, Plaintiff began to draw a pension in the annual amount of approximately $48,300.00 for life (*id.* ¶ 35).

On September 3, 2010, Rex Hall, a staff writer for the Kalamazoo Gazette newspaper, submitted to the City a Freedom of Information Act (FOIA) request relating to "the internal investigation" of Plaintiff's conduct at the graduation (Dfs.' SMF ¶ 38). City Attorney Clyde Robinson is the City's designated FOIA coordinator (*id.* ¶¶ 36-37). Robinson attested that he sent

Plaintiff a letter advising him of the September 3, 2010 FOIA request, but Plaintiff denies having received any letter (*id.* ¶ 39).

On October 5, 2010, Hall submitted another request for "… a copy of the Kalamazoo Department of Public Safety personnel file of Officer Mark Laster" (Dfs.' SMF ¶ 41). On October 14, 2010, Robinson sent a letter to Hall, indicating that the fee for copies of the requested documents was $90.20 and that "[u]pon receipt of payment the documents will be released to you" (*id.* ¶ 42). Robinson attested that he also sent Plaintiff a letter advising him of the October 5, 2010 FOIA request, but Plaintiff denies having received this second letter, too (*id.* ¶ 43). On January 6, 2011, the Kalamazoo Gazette issued a check to the City in the amount of $90.20, and the requested documents–363 pages–were released to the Kalamazoo Gazette (*id.* ¶ 46).

Defendants assert that before releasing any documents to the Gazette, Robinson reviewed each page for possible withholding or redactions and redacted information from about 100 of the 363 pages released (Dfs.' SMF ¶ 47). According to Defendants, Robinson intended to redact any mention of Plaintiff's home address and did redact twelve such mentions; however, he inadvertently failed to redact the address on two documents (*id.* ¶ 48). Further, applying the balancing test set forth in the Act and concluding that the public interest in disclosure outweighed the interest in nondisclosure, Robinson decided not to redact the name of either Plaintiff's wife or his mother (*id.* ¶ 49). On January 16, 2011, the Kalamazoo Gazette published an article describing the incident involving Plaintiff at the graduation attended by President Obama (*id.* ¶ 50). Plaintiff indicates, and Defendants do not dispute, that the on-line article included a link to the released documents (*id*; Dfs.' Brief, Dkt 92 at 16).

On October 4, 2011, Plaintiff initiated this lawsuit. In his First Amended Complaint filed

5

June 11, 2012, Plaintiff alleges civil rights violations (Counts I & II); a retaliatory free speech claim (Count III); a violation of Michigan's Freedom of Information Act, MICH. COMP. LAWS § 15.231 *et seq.* (Count VI); and the state law tort of Intentional Infliction of Emotional Distress (Count VII) (Dkt 39).[2] Following discovery, this Court conducted a Pre-Motion Conference in January 2013 on Defendants' proposed dispositive motion. The parties filed their motion papers in March 2013.

## II. ANALYSIS

### A. Standards of Review

Defendants filed a combined Motion for Summary Judgment pursuant to FED. R. CIV. P. 56(a) and a Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(6). A moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The initial burden is on the moving party to show that there is no dispute regarding any genuine issue of material fact. *Slusher v. Carson,* 540 F.3d 449, 453 (6th Cir. 2008). "Once the moving party supports its motion for summary judgment, the opposing party must go beyond the contents of its pleadings to set forth specific facts that indicate the existence of an issue to be litigated." *Id.* In considering a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Slusher,* 540 F.3d at 453. "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestlé USA, Inc.,* 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson v. Liberty Lobby,*

---

[2]Plaintiff also alleged a "Violation of 42 USC 1983" (Count IV) and "Punitive Damages" (Count V); however, in his response to Defendant's motion, Plaintiff indicates that he is voluntarily dismissing these two counts (Dkt 96 at 48).

*Inc.*, 477 U.S. 242, 251-52 (1986)).

When evaluating a 12(b)(6) motion for failure to state a claim, the Court must accept well-pleaded allegations of the complaint as true and all allegations must be construed in the light most favorable to the plaintiff. *Bower v. Fed. Exp. Corp.*, 96 F.3d 200, 203 (6th Cir. 1996). As the Supreme Court stated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a motion to dismiss will be denied only where the "[f]actual allegations [are] enough to raise a right for relief above the speculative level" "on the assumption that all of the complaint's allegations are true . . . ." *Id.* at 545. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility . . . .'" *Id.* (quoting *Twombly*, 550 U.S. at 556-57). Making a determination of plausibility "is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

### B. Discussion

1. *Race Discrimination*

Plaintiff presents a race discrimination claim under state law in Count I of his First Amended Complaint and under federal law in Count II. In these two counts, which are both directed against

the City,[3] Plaintiff alleges that "[i]n June through September 2010, the Plaintiff was intentionally discriminated against by his employer because of retaliation for prior complaints and because of racial discrimination" (Dkt 39 at ¶¶ 38, 45). He alleges that he was "constructively discharged against his will" and suffered "other adverse job actions" (*id.* at ¶¶ 39-41, 46-48).

Title VII provides that it shall be unlawful for an employer to discriminate against any individual with respect to the individual's "compensation, terms, conditions or privileges of employment, because of such individual's race ..." 42 U.S.C. § 2000e-2(a)(1). Similarly, Michigan's Civil Rights Act prohibits "discriminat[ing] against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of ... race ..." MICH. COMP. LAWS § 37.2202(1)(a).

The prima facie requirements for a discrimination case are the same under Michigan and federal law. *Sniecinski v. Blue Cross & Blue Shield of Mich.*, 666 N.W.2d 186, 193 (Mich. 2003). When the claim is based on circumstantial evidence, as here, a plaintiff is required to first show that (1) he is a member of a protected class, (2) he was subjected to an adverse employment action, (3) he was qualified for the job, and (4) he was treated different from similarly-situated nonminority employees for the same or similar conduct. *Logan v. Denny's, Inc.*, 259 F.3d 558, 567 (6th Cir. 2001).

Defendants' motion contests Plaintiff's evidence supporting the second prong of his prima facie case, whether Plaintiff has demonstrated that the City subjected Plaintiff to an adverse employment action. Defendants challenge Plaintiff's assertion that he suffered a constructive

---

[3]Although Counts I and II of Plaintiff's First Amended Complaint reference "the Defendants," Plaintiff's counsel clarified at the January 7, 2013 Pre-Motion Conference that Plaintiff is proceeding with these counts as to the City only (1/8/13 Order, Dkt 79).

discharge. In *Logan*, the Sixth Circuit announced that "[t]o demonstrate a constructive discharge, Plaintiff must adduce evidence to show that 1) the employer ... deliberately create[d] intolerable working conditions, as perceived by a reasonable person, and 2) the employer did so with the intention of forcing the employee to quit." *Saroli v. Automation & Modular Components, Inc.*, 405 F.3d 446, 451 (6th Cir. 2005) (quoting *Logan*, 259 F.3d at 568-69). "To determine if there is a constructive discharge, both the employer's intent and the employee's objective feelings must be examined." *Id.*

The Sixth Circuit in *Logan* also formally adopted the Fifth Circuit's approach to determining whether the first prong of the constructive discharge inquiry has been met, counseling that:

> Whether a reasonable person would have [felt] compelled to resign depends on the facts of each case, but we consider the following factors relevant, singly or in combination: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a [male] supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Logan*, 259 F.3d at 569 (quoting *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000)).

Applying the *Logan* test to Plaintiff's claim here, the Court concludes that Plaintiff has not presented a genuine issue of material fact as to whether he was constructively discharged from his employment. Plaintiff opines that he was "forced to resign" because he "saw the writing on the wall and knew that the proverbial axe/sword was coming down on him" (Dkt 96 at 27). Plaintiff also asserts that his "working conditions were such that a reasonable person in the [sic] his shoes would have felt compelled to resign" (*id.* at 28). Regarding the latter assertion, Plaintiff recounts various instances where he perceives he was treated different from similarly-situated nonminority employees for the same or similar conduct, e.g., requesting to attend an outside training program, requesting

to use a meeting room, requesting to keep personal property at his workplace, and other instances (*id.* at 29-42).

Viewing the facts in the light most favorable to Plaintiff, there is insufficient evidence to demonstrate that the City deliberately created intolerable working conditions. Even assuming arguendo that any of Plaintiff's examples of purported disparate treatment rise to the level of "badgering, harassment, or humiliation," there is simply no evidence in the record that the incidents were calculated by the City to encourage Plaintiff's resignation.

Nor does the record support a finding that the City intended to cause Plaintiff to resign or encouraged him to do so. There is no dispute that Plaintiff was not told that his employment would be terminated at the Predetermination Hearing, and the mere fact that the hearing was noticed (or that the uninformed McCaw speculated about its outcome) cannot serve to create a genuine issue of material fact. *Contrast Logan*, 259 F.3d at 569 (constructive discharge established where employee resigned after being informed that if she remained with the company she would be demoted) *with Saroli*, 405 F.3d at 452 (holding that the mere fact that the owner told the plaintiff that a demotion would have "probably occurred" if the employee did not resign is, by itself, insufficient to raise a genuine issue as to whether a constructive discharge occurred); and *Spence v. Donahoe*, No. 11-3203, 2013 WL 628524, at *11 (6th Cir. Feb. 21, 2013) (holding that the plaintiff had not established a genuine dispute as to whether his conversation with his manager was intended to force him to quit, nor had the plaintiff established that a reasonable employer would have foreseen that the plaintiff would feel constructively discharged because of a Letter of Instruction or a predisciplinary meeting).

In sum, Defendants have borne their burden of pointing this Court to the absence of evidence

in support of the second element of Plaintiff's prima facie case. The City is therefore entitled to summary judgment of Plaintiff's race discrimination claim in Counts I and II.

2.  *First Amendment Retaliation*

In Count III of his First Amended Complaint, which Plaintiff directs against all Defendants,[4] Plaintiff alleges that "after filing said reports with the [Equal Employment Opportunity Commission (EEOC)], Defendants continued to harass, micro-manage, discriminate and retaliate against Plaintiff for his reporting the Defendants' conduct, subsequently followed by adverse employment actions, which lead [sic] up to his constructive discharge" (Dkt 39 at ¶ 57).

To establish a prima facie case of First Amendment retaliation, a plaintiff must show that (1) he was engaged in constitutionally protected speech, (2) he was subjected to an adverse action or was deprived of some benefit, and (3) the protected speech was a substantial or motivating factor in the adverse action. *Leary v. Daeschner,* 349 F.3d 888, 897 (6th Cir. 2003). The analysis of rights of free speech is the same under the state and federal constitutions. *In re Contempt of Dudzinski,* 667 N.W.2d 68, 71-72 (Mich. Ct. App. 2003).

As Defendants point out, any EEOC Charge that Plaintiff filed after his retirement cannot properly form the basis of his retaliatory free speech claim. Likewise, Plaintiff's second EEOC Charge filed in August 2010 cannot properly form the basis of his retaliatory free speech claim where the City had already completed its investigation of Plaintiff's conduct at the graduation and the only "action" the City took after the filing of the second EEOC Charge was the scheduling of the Predetermination Hearing.

Plaintiff's retaliatory free speech claim rests on his first EEOC claim dated June 11, 2009,

---

[4]Although Plaintiff includes allegations about Kalamazoo Public Safety Department Chief Jeff Hadley, Hadley has not been made a defendant in this case.

in which Plaintiff alleged that (1) he was denied the opportunity to go to Indianapolis for training; (2) he was denied the opportunity to host his daughter's second birthday party in a conference room at one of the City's firehouses; and (3) he received what he perceived was an unfair "Memorandum of Counseling" from a superior officer (Dfs.' SMF ¶ 52; EEOC Charge attached to Robinson Aff., Dfs.' Ex. F [Dkt 92-2 at 13]). The resulting "Notice of Right to Sue within 90 days" was issued by the Department of Justice on November 8, 2010 (*id.* ¶ 53).

Both parties acknowledge that to prove the first element of a retaliatory free speech claim, public employees must meet additional standards to establish that the speech at issue is constitutionally protected. *See Leary*, 349 F.3d at 897. First, a public employee plaintiff must demonstrate that the speech involved matters of public interest or concern. *Id.* (citing *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1048 (6th Cir. 2001)). Second, the plaintiff must show that his interest in addressing these matters of public concern outweighs the interest of his employer "in promoting the efficiency of the public services it performs through its employees." *Id.* (quoting *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 568 (1968)); *see also Garcetti v. Ceballos,* 574 U.S. 410, 418-20 (2006).

Whether the speech at issue touches on a public matter is a question of law for the court. *Barnes v. McDowell*, 848 F.2d 725, 733 (6th Cir. 1988). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147-148 (1983). The Sixth Circuit has held that the proper inquiry is not what might be "incidentally conveyed" by the speech and that "passing" or "fleeting" references to an arguably public matter do not elevate the speech to a matter of "public concern" where the "focus" or "point" of the speech advances only a private interest. *Farhat v. Jopke*, 370 F.3d 580, 592-93 (6th Cir. 2004).

Drawing all inferences in a light most favorable to Plaintiff, the record before this Court could not lead a rational trier of fact to find for Plaintiff on his retaliatory free speech claim because he has not identified any constitutionally protected speech. Rather, the focus of his June 11, 2009 EEOC charge is personal to Plaintiff, i.e., how the City responded to his request to attend an outside training program, how the City responded to his request to use a meeting room, and Plaintiff's perception of the discipline he received. "[M]atters of public concern are to be contrasted with internal personnel disputes or complaints about an employer's performance." *Brandenburg v. Hous. Auth. of Irvine*, 253 F.3d 891, 898 (6th Cir. 2001). Because Plaintiff's EEOC charge did not encompass matters of public concern, Defendants have borne their burden of pointing this Court to the absence of evidence in support of the first element of Plaintiff's prima facie case. Defendants are therefore also entitled to summary judgment of Plaintiff's Count III.

3. *Freedom of Information Act*

In Count VI of his First Amended Complaint, titled "Violation of MCL 15.231 ET. SEQ. (FOIA)," Plaintiff seeks damages (punitive, actual and compensatory) against the City and Defendant Robinson, the city attorney,[5] for alleged violations of Michigan's FOIA. Plaintiff asserts that "Michigan's Freedom of Information Act, MCL 15.231 *et. seq.*, defines the rights and duties of the parties involved under FOIA and provides the remedies available for violations of the Act" (Dkt 39 at ¶ 74).

Defendants properly point out that Michigan's FOIA does not recognize a cause of action for money damages based on a purportedly wrongful FOIA release (Dkt 92 at 19). In examining

---

[5]Although Count VI of Plaintiff's First Amended Complaint references "the Defendants," Plaintiff's counsel clarified at the January 7, 2013 Pre-Motion Conference that Plaintiff is proceeding with Count VI as to the City and Defendant Robinson only (1/8/13 Order, Dkt 79).

the Act in 1982, the Michigan Supreme Court held that while an action may be commenced in circuit court to compel disclosure of public records under MICH. COMP. LAWS § 15.240(1), "no provision is made for an action to forbid disclosure." *Tobin v. Mich. Civil Serv. Comm'n*, 331 N.W.2d 184, 187 (Mich. 1982); *see also Detroit Int'l Bridge Co. v. Fed. Highway Admin.*, 666 F. Supp. 2d 740, 746 (E.D. Mich. 2009) (explaining that "reverse FOIA cases"—cases where a party that has submitted information to the government seeks to prohibit disclosure to a third party—are actually brought under the Administrative Procedures Act (APA), 5 U.S.C. § 702). The Michigan Supreme Court further held that only persons asserting the right to inspect a public record are eligible for an award of attorney fees or punitive damages, MICH. COMP. LAWS § 15.240(4) and (5), and only a person requesting public documents is authorized to commence an action in circuit court under FOIA, MICH. COMP. LAWS § 15.235(7). *Tobin, supra.* Therefore, Plaintiff's allegations here fail to state a claim under Michigan's FOIA, and the Court agrees that Defendants are entitled to dismissal of Plaintiff's Count VI.[6]

4.    *Intentional Infliction of Emotional Distress*

Last, in Count VII of his First Amended Complaint, Plaintiff invokes this Court's supplemental jurisdiction and claims that Defendants committed the state law tort of intentional infliction of emotional distress inasmuch as their actions "were completely and totally outside the bounds of acceptable behavior for any adult person living and functioning in this democratic society

---

[6]Given this conclusion, the Court does not reach the merits of Defendants' alternative argument that dismissal would also be appropriate because the City is immune to Plaintiff's claim under MICH. COMP. LAWS § 691.1407(1) inasmuch as the City was engaged in the exercise or discharge of a governmental function, and attorney Robinson is immune under MICH. COMP. LAWS § 691.1407(5) inasmuch as he was acting within the scope of his executive authority (Dkt 92 at 19-20).

and, as such, were shocking, extreme and outrageous" (Dkt 39 at ¶ 84). Plaintiff alleges that Defendants inflicted emotional damage by "their shocking, outrageous and extreme behavior directed towards him during his term of employment and even post his constructive discharge the retaliation continued with the improper release of his entire personnel file to the press for the whole wide world can [sic] see him in a false, misleading and prejudicial light" (*id.* ¶ 86).

Recovering for the state law tort of intentional infliction of emotional distress requires a plaintiff to prove the following four elements: (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress. *VanVorous v. Burmeister,* 687 N.W.2d 132, 141-42 (Mich. Ct. App. 2004). Whether the offending conduct is extreme and outrageous is initially a question of law for the court. *Id.* at 142. The threshold for showing extreme and outrageous conduct is high. *Id.* No cause of action will necessarily lie even where a defendant acts with tortious or even criminal intent; rather, liability is imposed only where "'the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (quoting Restatement Torts, 2d, § 46, pp. 72-73).

Even accepting Plaintiff's factual allegations as true and construing them in the light most favorable to Plaintiff, the allegations simply do not reach this high measure. Further, this Court is not required to accept Plaintiff's threadbare recitals of the elements of the cause of action as true. *See Iqbal*, 556 U.S. at 678. Plaintiff's Count VII fails to state a plausible intentional infliction of emotional distress claim, and Defendants are entitled to its dismissal.

### III. CONCLUSION

For the foregoing reasons, the Court determines that Defendants' Motion for Summary Judgment and Dismissal (Dkt 91) is granted. An Order will be entered consistent with this Opinion. As the Order resolves all pending claims, a corresponding Judgment will also be entered.


DATED: April 25, 2013                     /s/ Janet T. Neff
                                          JANET T. NEFF
                                          United States District Judge